H. LEWIS. BROWN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 107266.   Promulgated March 16, 1943.

*Floyd F. Toomey, Esq.*, for the petitioner.
*James C. Maddox, Esq.*, for the respondent.

## OPINION.

BLACK, *Judge:* The question in this proceeding is to determine how much of the $228,068.44 fee paid in 1937 to petitioner by the Alper Chemical Corporation is taxable to petitioner in that year. Petitioner in his return for that year reported $182,016.19 as taxable. This amount represented the difference between the full amount of the fee and $46,052.25 claimed by the Burroughs estate in the letter of its executor dated March 10, 1938, just five days before petitioner filed his return for 1937. Although the respondent has added $39,602.80 to the amount reported by petitioner in his return, we understand from

his brief that he does not now contend that any more than $221,252.29 of the entire fee is taxable to petitioner in the taxable year 1937. He arrives at this amount in the following manner. First, he treats the total period of joint interest in the fee as extending from the date of the agreement with Alper Chemical Corporation to six months after the death of Burroughs or from January 25, 1929, to December 19, 1929, a period of approximately eleven months. He then allocates five-elevenths of the $14,995.50 actually paid to the Burroughs estate, or $6,816.15, to the period of joint interest prior to Burroughs' death and six-elevenths thereof, or $8,179.35, to the period of joint interest after Burroughs' death. This latter amount the respondent determined was a payment by petitioner "for the good will of the deceased partner in the practice" and was income to petitioner upon the authority of *City Bank Farmers Trust Co., Executor, supra*. In other words, the respondent determined and contends that the entire fee, less the $6,816.15 he allocated to the period of joint interest prior to Burroughs' death, or $221,252.29, is taxable income to petitioner in 1937.

Petitioner primarily contends that he erred in reporting $182,016.19 of the fee. as taxable income in his 1937 return; that he should have reported only one-half of the fee or $114,034.22 as taxable income in 1937; that he held the other one-half of the fee in trust for himself and the estate of his deceased partner until the ownership thereof could be determined which determination did not occur until 1938. Petitioner in making this contention relies principally upon *Sara R. Preston*, 35 B. T. A. 312, and *E. P. Madigan*, 43 B. T. A. 549. The latter case, says petitioner, "is squarely in point, even as to all of the material facts." We think both cases are distinguishable upon their facts.

In the *Preston* case, two lawyers received a check payable jointly to them. They could not agree as to the amount to which each was entitled; so the check was deposited in a bank to the joint account of both, and there was drawn from the joint account during the taxable year such amount as each conceded the other entitled to, the balance to be drawn only upon final settlement of the differences between them. We held in that case that each attorney in the taxable year was taxable only on the amount withdrawn from the joint account for his respective use and that the balance was not taxable until there was a final settlement. There neither could draw on the joint account without the consent of the other. That situation is not present in the instant proceeding. All the money received by petitioner in the collection of the fee in 1937 was entirely under his control except the $7,982.40 which he paid to the Burroughs estate in October 1937.

In the *Madigan* case, petitioner was the coach and athletic director of St. Mary's College. His compensation was $7,000 a year plus 10

percent of St. Mary's share of the football receipts. He reported his income on the cash basis. His share of the receipts of 1934 and 1935 amounted to $21,690.62, but prior to November 1936 he had not been paid. In November 1936 St. Mary's received a check for $38,324.15, as the result of a game played with Fordham University, which the president of St. Mary's endorsed to petitioner "with the stated understanding that petitioner was to take the $21,690.62 due him for 1934 and 1935 and was to hold the balance in trust until the accounting could be completed for the 1936 season." In March 1937 the accounting was completed and Madigan was permitted to keep all except $1,339.71, which he turned over to St. Mary's. The Commissioner determined that Madigan must return as income in 1936 the entire check for $38,324.15. We held Madigan taxable on only $21,690.62 and that the Commissioner was in error in adding any additional amount of the Fordham check. This case is clearly distinguishable from the instant proceeding. There the petitioner was to hold $16,-633.53 "in trust until the accounting could be completed for the 1936 season." In the instant proceeding petitioner deposited the check which he received for the fee in question in the bank account which he used for his law business. He wrote a letter to the executor of the Burroughs estate in which he enclosed his check for $7,982.40 and gave it as his judgment that this amount represented the division of the fee to which the Burroughs estate was entitled and that he was entitled to keep the balance. In this connection petitioner stated in his letter of October 28, 1937, to the Burroughs estate, as follows:

I have been over the record rather carefully and, after taking all the elements into consideration, have reached the conclusion that the estate of Mr. Burroughs is fairly entitled to about 3½% of the fee, and I am enclosing herewith a check made out on that basis, as per computation enclosed.

In the face of these circumstances it seems altogether unreasonable for petitioner to contend that under the doctrine of the *Preston* case and the *Madigan* case, both *supra*, that petitioner is taxable on only one-half of the fee in 1937 and that his part of the balance of the fee should be deferred for taxation until 1938. Moreover, the facts which are in evidence, oral and documentary, show that the bulk of the fee belonged to petitioner. It is perfectly clear that the greater part of the work for which the fee was paid was done after Burroughs' death. Just how much of the fee the Burroughs estate was entitled to receive was not easy to determine, but by no stretch of the imagination, we think, could anyone contend that the Burroughs estate was entitled to one-half of the fee. The legal representatives of the Burroughs estate made no such contention at any time. Therefore, it is clear that petitioner's contention that he is taxable on only one-half of the fee in 1937 under the doctrine of the *Preston* case and *Madigan* case can not be sustained.

If petitioner's contention in this respect is to be denied, then what is the amount of the fee upon which petitioner is taxable in 1937? We think there is some plausibility for the argument that he is taxable on all of it, except the $7,982.40 check which he sent to the executor of the Burroughs estate October 28, 1937. The balance of the fee was either transferred to the joint account of petitioner and his wife or left in petitioner's law firm account of which he was the sole proprietor and upon which he could check at will.

Respondent contends that under *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, petitioner was taxable on the entire amount except $6,816.15, the amount ultimately paid to the estate of Burroughs under the partnership agreement for the period prior to Burroughs' death. While, as above stated, we think there is some plausibility in this contention of respondent, nevertheless, there are important elements of distinction in the facts of the instant case and those present in the *North American Oil Consolidated* case, *supra*. In the latter case, as the Supreme Court pointed out in its opinion, the taxpayer had received the earnings in question *under a claim of right*, and in the taxable year was unrestricted in the disposition of such earnings. Under such circumstances the Supreme Court held that *North American Oil Consolidated* was taxable on the income so received, "even though it may be claimed that the taxpayer is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." The instant case is different from the *North American Oil Consolidated* case, we think, in this important respect. Petitioner's claim to at least some indefinite part of the amount retained after sending the executor of the estate the check for $7,982.40 was a *qualified* claim of right, for in his letter transmitting the check. petitioner, among other things, wrote:

While the present check is sent as representing my idea of a fair division, it is not intended in any manner to bind the Trust Company because I recognize that you are not at this time in possession of sufficient information to form a judgment as to the correctness of my own conclusions, and I am very anxious indeed both that you should have this opportunity and that when the whole ground has been covered the ultimate figure will be one that is entirely acceptable to you, and more particularly the beneficiaries, as I am sure it will be to me, whatever that figure may turn out to be.

We have before us evidence as to what the division of the fee turned out to be. On April 27, 1938, an agreement was reached between petitioner and the legal representatives of the Burroughs estate under which the Burroughs estate's share of the fee was fixed at $14,995.50, and the remainder of the fee, it was agreed, belonged to petitioner. Now that we have that information at hand it would seem proper to use it in determining petitioner's income tax liability for 1937 rather than to make some kind of a theoretical allocation of the fee between the parties when it was received in 1937, for, as we have already said,

it was clear that petitioner was entitled to much more than one-half of the fee. We, of course, are well aware that the general principles of Federal income taxation require the determination of income at the close of taxable years without regard to the effect of subsequent events. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359; *Penn* v. *Robertson*, 115 Fed. (2d) 167. But there are exceptions. Cf. *E. B. Elliott Co.*, 45 B. T. A. 82.

There is precedent, we think, in the type of case we have here for using the actual figures agreed upon by the parties early in 1938 rather than to make some kind of theoretical allocation at the end of 1937. See *Lillie C. Pomeroy et al., Executors*, 24 B. T. A. 488; affd., 68 Fed. (2d) 411. In the *Pomeroy* case the taxable years which we had before us were the years 1922 and 1923. A small deficiency for 1924 was conceded. The sole issue was as to the correct allocation between Pomeroy and the estate of Josiah Dives of the net profits derived from the operation of a business conducted under the name of Dives, Pomeroy and Stewart for the periods September 21 to December 31, 1922, and January 1 to June 30, 1923. There were two partners, Dives and Pomeroy. Dives died September 21, 1922. The income from the business previously conducted as a partnership was as follows:

| | |
|---|---:|
| Sept. 20 to Dec. 31, 1922 | $361,447.54 |
| Jan. 1 to June 30, 1923 | 191,223.93 |
| Total | 552,671.47 |

On April 23, 1923, the executors of the Dives estate and Pomeroy agreed that $176,250 was to be paid to the Dives estate "in full settlement of any claim * * * for profits accrued to the partnership business from the date of the death of said Josiah Dives." The Board held that the amount of the earnings to be taxed to Pomeroy should be determined as follows:

| | 1922 | 1923 |
|---|---:|---:|
| Earnings of entire business | $361,447.54 | $191,223.93 |
| Less 361,447.54/552,671.47 of 176,250 | 115,267.63 | |
| Less 191,223.93/552,671.47 of 176,250 | | 60,982.37 |
| Amount taxable to Pomeroy | 246,179.91 | 130,241.56 |

In affirming the Board the Court of Appeals of the District of Columbia said in part:

While the agreement (of April, 1923) was made later than at the close of the first accounting period, it was made before the close of the second period, "when", as stated in petitioners' reply brief, "it could not be known whether there would be profits or not." This may have been the reason why the heirs were willing to accept 6 per cent. interest instead of sharing prospective profits. At all events, the good faith of the parties in entering into the contract is not impugned in any way. As it turned out, Pomeroy (who died September 13, 1925) made a good bargain. His estate should pay taxes on what he actually received.

While in the instant case we do not have both the years 1937 and 1938 before us, as we had both the years 1922 and 1923 before us in the *Pomeroy* case, nevertheless, it is true that in the *Pomeroy* case retroactive application of an agreement made by the parties in 1923 was made in determining the taxpayers' income tax liability for the year 1922. In that important respect the two cases are similar.

Since we now know what the facts are as to the division of the fee in question and since petitioner received all the money in 1937 and only disbursed $7,982.40 of it to the Burroughs estate, we shall tax petitioner in 1937 on the basis of the known facts as shown by agreement reached in the early part of 1938, under the doctrine of the *Pomeroy* case, *supra*. Cf. *E. B. Elliott Co., supra*.

Having thus held, it becomes necessary to consider petitioner's alternative contention. In the alternative, petitioner contends that if the April 27, 1938, agreement between petitioner and the executor of the Burroughs estate be given retroactive effect, as respondent contends, then in any event the total period of joint interest in the fee as stated in the April 27, 1938, agreement "was from October 15, 1925, to December 19, 1929, or four years and two months"; that based upon a period of joint interest of 50 months instead of 11 months, $44/50$ of the $14,995.50 actually paid to the Burroughs estate, or $13,196.04, should be allocated to the period of joint interest prior to Burroughs' death and 6/50, or $1,799.46, should be allocated to the period of joint interest after Burroughs' death; and that, therefore, no more than $214,872.40 ($228,068.44 less $13,196.04) is taxable to petitioner in the calendar year 1937. In this contention we think petitioner must be sustained.

The agreement of April 27, 1938, which we are applying in reaching our decision, shows that there was a direct connection between the period of joint interest therein agreed upon and the amount of the estate's participation. In allocating the estate's share between the periods of joint interest before and after the death of Burroughs, the Commissioner had no more right to disregard the period of joint interest fixed in the agreement than he had to disregard the rest of the agreement. If any of the agreement is to be given effect, it seems to us that all of it must be given effect and that the Commissioner is inconsistent in doing otherwise in his determination of the deficiency. The Commissioner's allocation in his deficiency notice, based upon an eleven-month period of joint interest contrary to the agreement of the parties, it seems to us is clearly wrong and can not be sustained. We so hold.

For the purpose of allocating the $14,995.50 payment to the Burroughs estate which was agreed upon in April 1938 between the 44-month period of joint interest prior to the death of Burroughs and the six-month period of joint interest after his death, the evidence convinces us that an allocation on a time basis would be reasonably

commensurate with the value of the services rendered during the two periods. Eighty-eight percent thereof, or $13,196.04, is, therefore, applicable to the 44-month period of joint interest prior to the death of Burroughs and the remaining 12 percent thereof or $1,799.64 is allocable to the six-month period of joint interest after his death. It is necessary to make this allocation because both parties agree that under our decision in *City Bank Farmers Trust Co.*, *supra*, the amount of the fee which was paid the Burroughs estate for the six-month period after Burroughs' death was a capital payment in part for Burroughs' interest in the partnership and the parties are in agreement that this part of the payment is taxable income to petitioner. It probably should be pointed out that the above $1,799.64 is not the only capital payment that was made by petitioner for Burroughs' interest in the partnership. Other very considerable amounts were paid in prior years. Some of these are shown in the *City Bank Farmers Trust Co.* case, but they are not involved in any way in this proceeding and are, therefore, not set out here.

The allocation which we have made above should be used in a recomputation under Rule 50.

*Decision will be entered under Rule 50.*